# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LINNEA MARTZ-HAMILTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 1:16-cv-00319-SLC ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Linnea Martz-Hamilton appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Martz-Hamilton applied for DIB in May 2013, alleging disability as of May 31, 2005. (DE 12 Administrative Record ("AR") 123-29). Martz-Hamilton was last insured for DIB on March 31, 2010 (AR 139), and therefore, she must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB benefits).

The Commissioner denied Martz-Hamilton's application initially and upon reconsideration. (AR 63-66, 70-76). After a timely request, a hearing was held on December 10, 2014, before Administrative Law Judge Steven J. Neary (the "ALJ"), at which Martz-Hamilton,

---
[1] All parties have consented to the Magistrate Judge. (DE 10); *see* 28 U.S.C. § 636(c).

who was represented by counsel; Martz-Hamilton's husband; and Sharon Ringenberg, a vocational expert (the "VE"), testified. (AR 30-50). On February 13, 2015, the ALJ rendered an unfavorable decision to Martz-Hamilton, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform her past relevant work as a nail technician, as well as a significant number of unskilled, sedentary jobs in the economy. (AR 19-26). Martz-Hamilton requested a review by the Appeals Council and submitted additional evidence therewith, but her request was denied by the Appeals Council (AR 1-5), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Martz-Hamilton filed a complaint with this Court on August 31, 2016, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Martz-Hamilton alleges that: (1) the ALJ erred by failing to follow Social Security Ruling ("SSR") 83-20 for determining the onset date of her purported disabling impairments; (2) the residual functional capacity ("RFC") assigned by the ALJ is not supported by substantial evidence; and (3) the Appeals Council erroneously concluded that the evidence she submitted with her appeal was not "new and material." (DE 12 at 6-15).

As of her date last insured, Martz-Hamilton was 48 years old (AR 139), had a high school education and specialized job training as a cosmetologist and nail technician (AR 144), and had work experience as a babysitter and nail technician (AR 144, 192). In her DIB application, Martz-Hamilton alleged disability due to: congenital hypophosphatemic rickets, gastroesophageal reflux disease, "white coat hypertension," "possible fibromyalgia," menopause, arthritis in legs and back, and depression. (AR 143).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

3

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On February 13, 2015, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 19-26). At step one, the ALJ concluded that Martz-

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

Hamilton had not engaged in substantial gainful activity after her alleged onset date, May 31, 2005, through her date last insured, March 31, 2010. (AR 21). At step two, the ALJ found that Martz-Hamilton's congenital rickets was a severe impairment through her date last insured. (AR 22). At step three, the ALJ concluded that Martz-Hamilton did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 22).

Before proceeding to step four, the ALJ determined that Martz-Hamilton's symptom testimony was "not entirely credible" (AR 24) and then assigned her an RFC to perform the full range of sedentary work through her date last insured. (AR 22). Based on this assigned RFC and
the VE's testimony, the ALJ found at step four that as of her date last insured Martz-Hamilton was able to perform her past relevant work as a nail technician, both it was generally performed and as she actually performed it. (AR 25). Additionally, at step five the ALJ found that Martz-Hamilton could perform a significant number of unskilled, sedentary jobs in the economy, including a charge account clerk, a phone order clerk, and an addresser. (AR 26). Therefore, Martz-Hamilton's application for DIB was denied. (AR 26).

### C. SSR 83-20

Martz-Hamilton first argues that the ALJ said that she was disabled at least as early as her hearing, and consequently, that the ALJ erred by failing to follow SSR 83-20 to determine the onset date of her disability. (DE 12 at 6). Martz-Hamilton's first argument, however, mischaracterizes the record.

Martz-Hamilton's argument rests entirely upon a preliminary comment made by the ALJ at the outset of the hearing when describing the nature of the hearing to Martz-Hamilton. The

5

ALJ explained to Martz-Hamilton that because she was applying for DIB and was last insured for DIB in March 2010, in order to find her disabled he would have to find her disabled as of March 2010 and that it "[w]ouldn't matter that I currently find that you're disabled." (AR 34).

Martz-Hamilton takes this comment by the ALJ out of context and urges that the ALJ found that she was currently disabled. Not so. The ALJ's statement, taken in context, was not an unequivocal statement as to Martz-Hamilton's disability at the time of the hearing, but rather, was akin to a hypothetical illustration. *Cf. Campbell v. Chater*, 932 F. Supp. 1072, 1078 (N.D. Ill. 1996) (finding that the ALJ erred by failing to determine the claimant's onset date of disability in accordance with SSR 83-20 where the ALJ unequivocally stated at the hearing: "If your case was the ordinary kind of case where you had what we call insured status right now where I was just trying to determine what your condition is right now, okay, I would find you disabled. Okay. There's no question about that."). Nor did the ALJ state in his written decision that he found Martz-Hamilton was currently disabled. (*See* AR 19-26); *cf. Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ found that Taylor's impairments met regulation listings on January 4, 1994, and that Taylor was disabled as of that date. . . . Where, as here, a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the onset date of disability." (citations omitted)).

Therefore, because the ALJ did not find that Martz-Hamilton was currently disabled, SSR 83-20 is inapplicable. As a result, Martz-Hamilton's first argument fails.

### D. The RFC

Next, Martz-Hamilton argues that the RFC assigned by the ALJ is not supported by

substantial evidence, contending that the ALJ improperly relied on his own lay intuition and a flawed adverse credibility finding. (DE 12 at 9). Contrary to Martz-Hamilton's assertion, the RFC assigned by the ALJ is adequately supported.

The RFC is a determination of the tasks a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment:

> is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545. In doing so, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374814, at *5. Although an ALJ may decide to adopt the opinions in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996). When assigning the RFC, the ALJ must sufficiently explain his reasoning to build an "accurate and logical bridge" between the evidence of record and the RFC. *Craft v. Astrue*, 539 F.3d 668, 673, 677 (7th Cir. 2008).

1. The Medical Source Opinions

Martz-Hamilton first faults the ALJ for rejecting all of the medical source opinions of record. She argues that this left the ALJ "without a stitch" of expert guidance, resulting in his

7

improperly relying on his own lay intuition instead. (DE 12 at 9 (quoting *Campbell*, 932 F. Supp. at 1079)). But in advancing this argument, Martz-Hamilton fails to acknowledge that it is *she* who carries the burden of producing evidence sufficient to prove her DIB claim. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987))); *see Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

As the ALJ observed, Martz-Hamilton produced *no* evidence of any medical treatment during the five-year period from her alleged onset date of May 31, 2005, through her date last insured of March 31, 2010. (AR 22; *see* AR 196-249). The evidence that Martz-Hamilton did produce begins in December 2012—more than two-and-a-half years after her date last insured. (AR 196-207). This treatment in December 2012 was for dry eyes, muscle weakness, indigestion, and elevated blood pressure. (AR 24 (citing AR 196-207)). Dr. Michael Mohrman, Martz-Hamilton's family physician, wrote in December 2012 that Martz-Hamilton had congenital rickets resulting in short legs, that she was taking no medication, and that she "Appears well." (AR 207). In January 2013, Martz-Hamilton saw Dr. Mohrman for an annual gynecological exam, reporting that she had been achy in her joints and muscles "over the past year," that walking much of a distance was uncomfortable for her, and that she was considering applying for disability. (AR 24 (citing AR 206-07)). Dr. Mohrman indicated that this "seem[ed] reasonable to [him]." (AR 206).

On June 19, 2013, Dr. J. Sands, a state agency physician, reviewed Martz-Hamilton's record and found that there was insufficient medical evidence to evaluate the severity of her allegations prior to her date last insured. (AR 53).

On July 16, 2013, Dr. Mohrman penned a letter stating that Martz-Hamilton had premature lumbar spondylosis and degenerative arthritis in her knees and hips due to her congenital rickets; that her back was most severely affected resulting in chronic pain both at rest and with activity; that her pain had been progressive for the last 10 years and would become more debilitative in the future; and that she was "currently significantly disabled and ha[d] been so for the past four to five years." (AR 208).

On August 14, 2013, Dr. J.V. Corcoran, a state agency physician, reviewed Martz-Hamilton's record and found that no additional medical evidence was available from the relevant time period, and that there was insufficient medical evidence to evaluate severity of her allegations prior to her date last insured. (AR 59-60). Accordingly, he affirmed Dr. Sands's opinion. (AR 60).

On October 1, 2013, Dr. Mohrman completed a RFC questionnaire concerning Martz-Hamilton's impairments, identifying her diagnoses as lumbar spondylosis and congenital rickets. (AR 209-10). He opined that as of March 30, 2010, Martz-Hamilton could sit for one hour at a time and four to five hours total in an eight-hour workday; stand for 15 minutes at a time and stand or walk less than two hours in an eight-hour workday; needed to recline four hours each day; did not need a cane or assistive device to stand or walk; needed a 15-minute break every two hours in an eight-hour workday; could occasionally lift up to 10 pounds; could never stoop, crouch, kneel, or climb stairs; and that her symptoms were severe enough to constantly interfere

9

with her attention and concentration. (AR 209-10).

One year later, on October 30, 2014, a physical therapist completed a functional capacity evaluation upon Dr. Mohrman's referral "to see what [Martz-Hamilton] can and cannot do at this time for [her] disability hearing." (AR 230). The therapist indicated that Martz-Hamilton could lift 10 pounds; occasionally reach, bend, and sit; rarely squat, stand, walk, or climb stairs; and never crawl or kneel. (AR 230-41). The therapist concluded that Martz-Hamilton's "material handling skills would qualify her for [a] sedentary physical demand level position using [The National Institute for Occupational Safety and Health (NIOSH)] guidelines at this time." (AR 239).

Martz-Hamilton argues that the ALJ improperly rejected Dr. Mohrman's opinion that she was disabled. The ALJ thoroughly considered Dr. Mohrman's opinion, penning four lengthy paragraphs on the topic:

> The medical records failed to establish disability from the alleged onset date of disability to the date last insured. Although she has congenital rickets, there is no record of treatment before December 2012 when she was seen at the emergency room for indigestion and muscle weakness. At that time, though, she did not report any pain. When she followed up with Dr. Mohrman[,] he noted that she appeared well with congenital rickets resulting in short legs. Even when she saw Dr. Mohrman in January 2013, the claimant said only that she had been "achy over the past year" (mostly in her back and knees), not since 2005. Although the claimant told Dr. Mohrman she could not walk far without discomfort, the doctor did not observe the use of an assistive device.
>
> . . . .
>
> While the undersigned considered the October 1, 2013, assessment completed by Dr. Michael Mohrman, . . . the ALJ does not find this persuasive. Although Dr. Mohrman stated he was "the family physician . . . and have been such for twenty-five years," he admitted in his assessment form that his first treatment of the

10

claimant was not until January 24, 2013. At that time claimant stated that she had been "achy over the past year" mostly in her back and knees and that walking much of a distance was uncomfortable for her. She did not report the severe pain and functional limitations to which she testified as occurring prior to her date last insured. The ALJ finds this to be a candid and credible statement as to claimant's functioning, and has accordingly concluded that claimant's ability to stand and walk was limited. Notwithstanding Dr. Mohrman's subjective statement that the claimant "is currently significantly disabled and has been for the past four to five years," there are simply no chart notes or other objective indications to support his conclusory statements. Furthermore, while the claimant has alleged the need for an assistive device at least since 2010, Dr. Mohrman specifically reported in his 2013 questionnaire that the claimant did not need an assistive device. Moreover, a review of the medical evidence shows no observation of the claimant even using an assistive device (walker) before May 2014.

Other unsupported assessed limitations which Dr. Mohrman lists are not consistent with the claimant's reports of her own functioning during the relevant period. For example, although the claimant acknowledged activity as a children's (ages 2 to 6) caregiver through at least mid-2009, Dr. Mohrman stated that the claimant could do no stooping, crouching, and kneeling at all. The undersigned also finds it difficult to rely on Dr. Mohrman's assessment as it seems internally inconsistent when, for instance, the claimant is not said to have "good" days and yet not said to be likely to miss any work days for absences because of "bad" days or for needed medical treatment. The undersigned concludes that Dr. Mohrman's assessment is essentially speculative in nature.

(AR 24-25 (internal citations omitted) (third alteration in original)).

Thus, the ALJ gave several "good reasons" for not fully crediting Dr. Mohrman's opinion. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." (citations omitted)). First, with respect to Dr. Mohrman's subjective statement that Martz-Hamilton had been "significantly disabled . . . for the past four to five years," the ALJ observed that "there are simply no chart

notes or other objective indications to support his conclusory statements." (AR 24). "The lack of objective support for a conclusion is a valid reason for discounting a treating physician's opinion." *Brown v. Astrue*, No. 1:10-cv-01035-SEB-MJD, 2011 WL 2693522, at *4 (S.D. Ind. July 8, 2011) (citations omitted); *see Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("The ALJ rightly emphasized that Dr. Preciado's sweeping conclusions lacked support in his own treatment notes." (citations omitted)).

The ALJ also observed that Dr. Mohrman's letter and RFC assessment were internally inconsistent with his own January 2013 treatment note, which reflected that Martz-Hamilton "Appears well" and had complained of some achiness only over the past year. (AR 24 (citing AR 206-07)). The ALJ also found Dr. Mohrman's responses on his October 2013 assessment to be internally inconsistent, in that Dr. Mohrman indicated that Martz-Hamilton would not have "good days" or "bad days," and that she would not miss any days from work due to her impairments or treatment. (AR 24 (citing AR 211)); *see Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (noting that an ALJ can discount a physician's opinion if it is internally inconsistent); *Clifford*, 227 F.3d at 871 (explaining that medical evidence may be discounted if it is internally inconsistent).

Additionally, the ALJ considered Dr. Mohrman's opinion inconsistent with other substantial evidence of record, which is another good reason to discount a treating physician's opinion. *See Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) ("[T]he administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—*which need not itself be medical in nature* . . . ." (alteration in original) (quoting *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995))). The ALJ viewed Martz-Hamilton's work

12

as a childcare provider for four years after her alleged onset date as inconsistent with Dr. Mohrman's opinion. (AR 24). In particular, the ALJ found Dr. Mohrman's opinion that Martz-Hamilton could never stoop, crouch, or kneel, and his opinion that she had been "significantly disabled . . . for the past four to five years," inconsistent with her performance of in-home childcare before and after school for four children, ages two to six, on a part-time basis from 2005 through mid-2009. (AR 24, 40). Similarly, Dr. Mohrman's opinion that Martz-Hamilton's symptoms were severe enough to "constantly" interfere with her attention and concentration is logically inconsistent with her performance of in-home childcare, even on a part-time basis, for four years after her alleged onset date. (AR 209).

In any event, as the Commissioner emphasizes, much of Dr. Mohrman's October 2013 assessment is consistent with the RFC for sedentary work assigned by the ALJ. "A claimant can do sedentary work if [she] can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted)). Here, Dr. Mohrman similarly opined that Martz-Hamilton could sit for four to five hours in an eight-hour workday, lift up to 10 pounds, and stand or walk up to two hours in an eight-hour workday. (AR 209-10).

In sum, "an ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Here, that is exactly what the ALJ did in weighing Dr. Mohrman's opinion along with Martz-Hamilton's testimony and other record evidence. *See id*. As such, the ALJ's discounting of Dr. Mohrman's

13

opinion is supported by substantial evidence.

2. <u>Credibility of Symptom Testimony</u>

Martz-Hamilton also argues that the assigned RFC is not supported by substantial evidence for the reason that the ALJ improperly discounted the credibility of her symptom testimony. Martz-Hamilton contends that the ALJ mischaracterized her part-time work in childcare from 2005 to 2009, and that having done so, the credibility determination cannot rest solely on the lack of medical evidence during the relevant period.

An ALJ's credibility determination concerning a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *see Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's credibility determination because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness"). "[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) (citations omitted).

As stated above, Martz-Hamilton contends that the ALJ "mischaracterized the nature of [her] sporadic and limited babysitting to imply that it was a relatively constant and grueling

14

experience." (DE 12 at 11). The ALJ did no such thing; rather, it is Martz-Hamilton who mischaracterizes the ALJ's decision. The ALJ correctly observed that Martz-Hamilton cared for four children, ages two to six, both before and after school, and occasionally at other times, from 2005 through mid-2009. (AR 22-24, 40). At no time did the ALJ state or imply that such childcare work was "relatively constant" or "a grueling experience" as Martz-Hamilton asserts in her brief.

Rather, the ALJ fairly considered Martz-Hamilton's performance of part-time childcare work for four years after her alleged onset date, together with her testimony that by 2009 she thought she could no longer properly care for the children due to her fatigue and her difficulty lifting them onto the toilet. (AR 23, 40). The ALJ reasonably concluded, however, that Martz-Hamilton's performance of childcare work for four years after 2005 was inconsistent with her representation on her May 2013 function report that her pain and fatigue had increased in 2005. (AR 23 (citing AR 161)); *see Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that Berger was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled.").

The ALJ also observed that while Martz-Hamilton claimed at the hearing that her pain and fatigue had steadily worsened, she indicated on her reconsideration and hearing level appeal forms that her impairments had not caused any changes in her daily activities or in her ability to care for her personal needs. (AR 23 (citing AR 38-39, 173, 181)). Moreover, Martz-Hamilton did not report worsening symptoms to Dr. Mohrman until January 2013, complaining of feeling achy only "over the past year," *not* since 2005. (AR 24 (citing AR 206-07)); *see Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) ("[A] discrepancy between the degree of pain

15

claimed by the applicant and that suggested by the medical records is probative of exaggeration." (citation omitted)). And the ALJ further noted that while Martz-Hamilton claimed that she needed to use a walker since 2010 because she "do[es]n't feel stable walking without holding onto something," Dr. Mohrman opined in his 2013 questionnaire that Martz-Hamilton did not need an assistive device; nor is there any medical evidence observing that Martz-Hamilton used an assistive device before May 2014. (AR 24 (citing AR 42, 210)); *see Lemerande v. Berryhill*, No. 17- C-190, 2018 WL 1061462, at *3 (E.D. Wis. Feb. 26, 2018) ("Whether or not the SSA chooses to use the word 'credibility,' statements by the claimant concerning the intensity, persistence and limiting effects of his or her impairments that are inconsistent with the medical and other evidence in the record need not be accepted by the ALJ in reaching a decision.").

At the end of the day, "an ALJ's credibility assessment will stand 'as long as [there is] some support in the record.'" *Berger*, 516 F.3d at 546 (alteration in original) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)). Here, when assessing the credibility of Martz-Hamilton's symptom testimony, the ALJ built an adequate and logical bridge between the evidence of record and his conclusion, *see Ribaudo*, 458 F.3d at 584, and his conclusion is not "patently wrong," *Powers*, 207 F.3d at 435. Consequently, the ALJ's credibility determination, which is entitled to special deference, *Powers*, 207 F.3d at 435, will stand. As such, Martz-Hamilton's second argument challenging the assigned RFC is unsuccessful; the RFC is supported by substantial evidence.

### E. Evidence Submitted to the Appeals Council

In her final argument, Martz-Hamilton argues that the Appeals Council committed a legal error in denying her request for review. With her request to the Appeals Council, Martz-

16

Hamilton submitted medical evidence consisting of an office visit note and a letter from Dr. John Karl L. de Dios, a medical geneticist, dated June 23, 2015. (AR 246-49). Contrary to Martz-Hamilton's assertion, the Appeals Council's action does not constitute a reversible error.

When a claimant provides additional evidence to the Appeals Council, the Council "must determine (i) whether the proffered new evidence relates to the proper time period and (ii) whether the evidence is 'new' and 'material.'" *Binzen v. Barnhart*, No. 01 C 2716, 2002 WL 31324061, at *1 (N.D. Ill. Oct. 16, 2002) (quoting *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997)); *see Getch v. Astrue*, 539 F.3d 473, 483-84 (7th Cir. 2008); 20 C.F.R. § 404.970(b). "If the Appeals Council answers both of these questions in the affirmative it must then determine whether the ALJ's decision is contrary to all of the evidence, i.e., the evidence before the ALJ and the new and material evidence submitted to the Appeals Council." *Binzen*, 2002 WL 31324061, at *1. "If the Appeals Council denies review at this stage—essentially reasoning that all of the evidence does not undermine the ALJ's decision—then the Council's decision is unreviewable[,]" *id.* (citing *Perkins*, 107 F.3d at 1294), provided, however, that the refusal does not rest on a mistake of law, such as a determination that the evidence newly submitted to the Appeals Council was not material to the disability determination. *See Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

In its Notice of Appeals Council Action, the Appeals Council stated that it considered the additional evidence submitted by Martz-Hamilton, but it concluded that the additional evidence did not provide a basis for changing the ALJ's decision. (AR 28). This language is akin to that criticized by the Seventh Circuit Court of Appeals in *Stepp v. Colvin*, 795 F.3d 711 (7th Cir. 2015). In *Stepp*, the Court found that the Appeals Council's language was not sufficiently clear

regarding whether it had denied review because it found that the additional evidence was not new or material at step one, or because the additional evidence did not render the ALJ's decision contrary to the weight of the evidence at step two. *Id*. at 723. As such, the Seventh Circuit found that a *de novo* review of the Appeals Council's determination concerning whether the additional evidence qualifies as "new and material" under 20 C.F.R. § 404.970(b) was necessary. *Stepp*, 795 F.3d at 725; *see also Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012) (finding that the Appeals Council's decision stating that it "considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the [ALJ's] decision" was unclear, necessitating the Court's *de novo* review of the Appeals Council's determination (first three alterations in original)).

Employing a *de novo* review here, the office visit note and letter from Dr. De Dios does not qualify as "new and material." "'[M]ateriality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means 'evidence not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins*, 107 F.3d at 1296 (quoting *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)). Admittedly, the office visit note and letter from Dr. De Dios are "new" in that they were not in existence when the ALJ issued his decision. *Compare Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988) (finding that a psychological evaluation performed after the ALJ's decision was new evidence as "it was not in existence at the time of the administrative proceedings" (citations omitted)), *with Sampl*e, 999 F.2d at 1144 (emphasizing that a physician's report derived from medical evidence already in the record did not constitute new information); *see also Perkins*, 107 F.3d at 1296.

18

However, Dr. de Dios's evidence is not "material" because there is not a "reasonable probability" that the Commissioner would have reached a different conclusion had the evidence been considered. *See Perkins*, 107 F.3d at 1296. To explain, Dr. de Dios definitively qualifies his opinion at the outset of his letter, stating: "Since this is the first time I am seeing Ms. Martz-Hamilton, there is no way I can document onset of symptoms with certainty." (AR 246). He states the same in his office visit documentation. (AR 248). Dr. de Dios further opines that based on Martz-Hamilton's current physical examination findings showing severe symmetrical bowing and somewhat shortening of the lower legs, it would likely be possible that Martz-Hamilton's condition developed only when these bones were developing, which would be in childhood. (AR 246). Dr. de Dios then closes his letter by stating: "Overall, current physical finding, her daughter's medical records and laboratory results, support the likelihood that Ms. Martz-Hamilton's condition started in her childhood and symptoms continued to progress to the state where she is in right now." (AR 246, 249).

Dr. de Dios's opinion is not "material" information because the record already reflects that Martz-Hamilton's condition developed as a child and has progressively worsened over time. (*See, e.g.*, AR 208, 226, 230). Thus, Dr. de Dios's opinion adds nothing new. As such, there is not a "reasonable probability" that the Commissioner would have reached a different conclusion had Dr. de Dios's office visit note and letter been considered. *See Perkins*, 107 F.3d at 1296. Consequently, Martz-Hamilton's final argument also fails to warrant a remand of the Commissioner's final decision, and thus, the decision will be affirmed.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk

19

is directed to enter a judgment in favor of the Commissioner and against Martz-Hamilton.

SO ORDERED.

Entered this 23rd day of August 2018.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge